■ Jack N. Rose, Respondent, v Roberta A. Furgerson, Appellant. [721 NYS2d 873] —Cardona, P. J. Appeal from an order of the Supreme Court (Dowd, J.), entered January 11, 2000 in Otsego County, which, *inter alia*, denied defendant's motion for summary judgment dismissing the complaint.

On September 25, 1997, plaintiff was involved in an accident wherein the automobile he was driving was struck from behind by a vehicle owned and operated by defendant. Following the accident, plaintiff drove himself home and his wife took him to the hospital. After outpatient treatment at the hospital, which included X rays,[1] plaintiff, wearing a neck brace, was released. Plaintiff missed one day of work as a result of the accident. In addition to his treatment at the emergency room, plaintiff sought the treatment of Anthony Cicoria, an orthopedist, immediately following the accident and was first seen by him on November 7, 1997. Upon examination, Cicoria found tenderness in plaintiff's neck as well as muscle spasms. James McChesney, the radiologist who performed an MRI on plaintiff on November 17, 1997, concluded that plaintiff showed evidence of early bulging of the disc at the C5-6 level "without significant consequences," as well as a minimal degree of subligamentous extrusion at the C6-7 level "with no significant

---

1. The X rays revealed mild degenerative changes at plaintiff's C5-6 and C6-7 disc spaces.

compromise of the canal in the midline." Plaintiff returned to Cicoria on November 26, 1997 and, after reviewing the MRI, Cicoria diagnosed plaintiff as having a flexion/extension to the cervical spine and herniated discs at C5-6 and C6-7. In a third visit on January 14, 1998, Cicoria indicated that plaintiff was making slow, steady improvement, and noted that massage therapy seemed to be helping. At that time, he was of the opinion that it was too soon to determine whether the herniated discs would present problems in the future.

In July 1998, plaintiff commenced this personal injury action alleging injuries to, *inter alia*, his neck, back and herniated discs in his cervical spine which constitute "serious injury" under three of the four categories set forth in Insurance Law § 5102·(d), namely, "permanent consequential limitation of use of a body organ or member," "significant limitation of use of a body function or system" and a "medically determined injury or impairment of a non-permanent nature" which prevented him from performing substantially all of his usual daily activities for at least 90 of the first 180 days following the accident. Following joinder of issue, defendant moved for summary judgment dismissing the complaint and plaintiff cross-moved for summary judgment seeking a determination that defendant was solely liable for the accident. Supreme Court denied both motions and defendant appeals.

With respect to plaintiff's claims under the permanent consequential limitation and significant limitation of use categories contained in Insurance Law § 5102 (d), defendant had the initial burden of showing that plaintiff did not suffer a "serious injury" within the meaning of the statute (*see, Gaddy v Eyler*, 79 NY2d 955, 956-957; *Barbarulo v Allery*, 271 AD2d 897, 898). Defendant submitted the report by Farouq Al-Khalidi, an orthopedist, who performed an independent medical examination on December 29, 1998. While Al-Khalidi diagnosed plaintiff as suffering from degenerative disc disease at C5-6 and C6-7, he opined that this condition was of preexisting origin which could have been temporarily aggravated by the accident[2] Al-Khalidi opined that plaintiff's condition at the time of his examination had reverted to the status of mild or intermittent symptoms in the interscapular region that were subjective in nature. Defendant also submitted the transcript of plaintiff's deposition wherein he testified that, after the accident, he continued to play racquetball once or twice a week,

**2.** Al-Khalidi also noted the presence of preexisting facet joint arthritis, the beginning stages of which were noticeable in an X ray taken of plaintiff's cervical spine in 1992.

although he could not compete with the same frequency and level of intensity that he did prior to the accident. Plaintiff also continued his participation in Tai Chi, exercising on a regular basis, although with some discomfort. With respect to his employment as a teacher, plaintiff testified that he now sits more frequently while giving lectures. Finally, plaintiff testified at the November 18, 1998 deposition that he was no longer taking any prescription medication, although he was using ibuprofen for pain.

Based upon our review of the medical reports, records and other proof relied upon by defendant, we conclude that defendant met her initial burden on her motion (*see, Burnett v Zito*, 252 AD2d 879, 881; *Tankersley v Szesnat*, 235 AD2d 1010, 1012). Therefore, it became incumbent upon plaintiff "to set forth competent medical evidence based on objective medical findings to support his claim" (*Boehm v Estate of Mack*, 255 AD2d 749, 750; *see, Evans v Hahn*, 255 AD2d 751).

In that regard, plaintiff submitted, *inter alia*, proof of his examination and treatment at the emergency room along with the MRI report and various records of Cicoria which indicated that plaintiff had herniated discs with accompanying physical symptoms. Notably, herniated or bulging discs do not per se meet the statutory threshold of serious physical injury, absent " 'objective evidence of the extent or degree of the alleged physical limitations resulting from the injuries and their duration' " (*Guzman v Michael Mgt.*, 266 AD2d 508, 509, quoting *Noble v Ackerman*, 252 AD2d 392, 394). There must also be competent proof connecting the condition to the accident (*see, Anderson v Persell*, 272 AD2d 733, 735; *see also, Heath v Allerton*, 279 AD2d 872). While Cicoria did opine following a July 30, 1999 examination that plaintiff's herniated discs were caused by the accident and the condition was not preexisting, he failed to specify any resulting loss or limitation of motion (*see, Guzman v Michael Mgt., supra; Hemmes v Twedt*, 180 AD2d 925; *cf., Heath v Allerton, supra; Anderson v Persell, supra; see also, Pierre v Nanton*, 279 AD2d 621). Instead, he stated in a conclusory fashion that he felt plaintiff sustained "a permanent loss [that] is consequential to the motor vehicle accident." In our view, the proof failed to overcome the evidence presented by defendant demonstrating the absence of serious injury sufficient to satisfy the "significant limitation" and "permanent consequential limitation" categories of Insurance Law § 5102 (d) (*see generally, Heath v Allerton, supra*).

Turning to plaintiff's claim that he was prevented "from performing substantially all of the material acts which consti-

tute[d] [his] usual and customary daily activities" for 90 of the 180 days following the accident (Insurance Law § 5102 [d]), it was necessary for plaintiff to demonstrate that his usual activities were curtailed "to a great extent rather than some slight curtailment" (*Licari v Elliott*, 57 NY2d 230, 236; *see, Bennett v Reed*, 263 AD2d 800, 801). Here, based upon our review of the medical evidence and plaintiff's own testimony concerning the restrictions placed on his lifestyle as a result of his injuries, we must agree with defendant's contention that plaintiff has failed to satisfy his burden of raising a triable question of fact in this regard (*see, Bennett v Reed, supra*).

Mercure, Crew III, Spain and Mugglin, JJ., concur. Ordered that the order is modified, on the law, with costs to defendant, by reversing so much thereof as denied defendant's motion for summary judgment; said motion granted, summary judgment awarded to defendant and complaint dismissed; and, as so modified, affirmed.